UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STATE OF NEW YORK and THE NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION,

                           Plaintiffs,                   **ORDER**
                                                                     CV 12-3755 (LDW) (SIL)
      -against-

THE MONFORT TRUST, KENNETH ANSCHUTZ,
Individually and as Trustee of the Monfort Trust,
TOWNSEND ANSHUTZ, Individually and as Trustee of
the Monfort Trust, PAMELA J. MONFORT, Individually
and as Trustee of the Monfort Trust, NANCY FAMIGLIETTI,
as Trustee of the Monfort Trust, JAMES C. TITUS, as Trustee
of the Monfort Trust, DEBORAH FIREBAUGH, and
JOHN L. BRADLEY, JR.,

                              Defendants.
------------------------------------------------------------------------X
JOHN L. BRADLEY, JR.,

                         Third-Party Plaintiff,
      -against-

O.J.V. REALTY CORP., MUSSO 3636 LLC, MUSSO
PROPERTIES, LLC and VICTOR A. MUSSO, Individually,

                         Third Party Defendants.
------------------------------------------------------------------------X
THE MONFORT TRUST, TOWNSEND AUSHUTZ,
Individually and as Trustee of the Monfort Trusts,
PAMELA J. MONFORT, Individually and as Trustee of the
Monfort Trusts, NANCY FAMIGLIETTI, Individually and
as Trustee of the Monfort Trusts, and JAMES C. TITUS,
Individually and as Trustee of the Monfort Trusts,

                       Third Party Plaintiffs,
      -against-

MUSSO 3636 LLC and VICTOR MUSSO,

                       Third Party Defendants.
------------------------------------------------------------------------X
**LOCKE, Magistrate Judge:**

This case comprises a first party action and two third party actions. Before the Court are two motions brought by the third party plaintiffs in the third party actions to disqualify attorney Theodore Firetog from representing third party defendants. *See* Docket Entries ("DE") [73] & [95]. Third party plaintiff John Bradley submitted supplemental papers with the court's permission. Defendants oppose the motions. For the reasons stated below, the motions are denied.

## BACKGROUND

The First Party Action

The complaint was filed by the State of New York and the New York State Department of Environmental Conservation (the "DEC") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA"), to recover costs for the clean-up of the former Munsey Dry Cleaners Site ("the Site") located in Port Washington, New York. According to the complaint, the Site was owned by the Monfort Trust, and each of its trustees are named as co-owners. The DEC and the owners of the Site entered negotiations regarding assessment of the Site for the presence of hazardous materials and remediation. In October 2000, DEC and the defendants entered into a consent order (the "Agreement") that was amended in May 2002. Under the terms of the Agreement, defendants were to reimburse the State for work related to the Site within thirty days of receiving an invoice for that work. The Agreement "caps reimbursement of the State's costs at $30,000, unless DEC 'determines that additional investigative work is required to be performed and the Respondents [Monfort Trust and trustees] perform the additional investigative work pursuant to this Order,' in which case 'Respondents shall also pay to the Department the additional State costs.'" Compl., ¶ 34, DE [1].

The DEC sent invoices requesting payment for additional investigative work on September 26, 2002, June 8, 2005, and June 27, 2006, but defendants only paid $30,000. Plaintiffs instituted

this action to recover the remainder of costs owed under the invoices, as well as future costs associated with the clean-up effort at the Site.

Third Party Actions

On February 8, 2013, two third party complaints were filed. The first was brought only by defendant trustee John L. Bradley, Jr., *see* DE [32], while the second was filed by the Monfort Trust and most of the other individual trustee defendants. *See* DE [34]. Victor Musso and Musso 3636 LLC were named as third party defendants in both actions, while the Bradley third party complaint also named O.J.V. Realty Corp. and Musso Properties.

According to the third party complaints, on November 5, 2003 the Monfort Trust sold and conveyed title to the Site to third party defendant Musso 3636. Third party defendant Victor Musso had been the property manager at the Site prior to the sale. In connection with the sale, two indemnification agreements were executed in September 2003 – one between Bradley, individually and as a Beneficiary under the Monfort Trust, and O.J.V. Realty Corp. and Victor Musso, *see* DE [32-4], the second between Pamela Monfort, James Titus, Townsend Anshutz and Nancy Famiglietti, individually and as Trustees of the Monfort Trust, and O.J.V. Realty Corp. and Victor Musso. *See* DE [73-8].[1] Bradley's third party complaint asserts claims for breach of contract and promissory estoppel, while the other third party complaint seeks indemnification together with attorneys' fees and costs. In both third party actions, Musso asserted a crossclaim[2] for contribution and/or

---

[1] There is no clear indication of the role of the third party defendant Musso Properties included in Bradley's third party complaint. For purposes of this motion, the third party defendants will be referred to collectively as "Musso."

[2] Although the third party defendants framed it as a crossclaim, it is technically a counterclaim.

indemnification from the third party plaintiffs.

Attorney Firetog and the Motions to Disqualify

Currently before the Court are two motions to disqualify attorney Theodore Firetog from continuing to represent Musso in this case.[3] After Bradley submitted a motion on notice seeking the disqualification, the third party plaintiffs in the other third party action attempted to join Bradley's motion. Noting that such an approach would be inappropriate since there are two distinct third party actions, Magistrate Judge Wall denied the request and allowed them to submit their own motion. They have done so, albeit as a letter motion. Defendants have opposed both motions. Bradley also argues that Firetog's conflict is imputed to his co-counsel, Richard Goldberg of the Law Offices of Steven Cohn, P.C., thus requiring disqualification of Goldberg and the Cohn firm as well.

It is undisputed that Firetog represented the Montfort Trust and its beneficiaries during the negotiations between the DEC and the Monfort Trust regarding the clean-up of the Site. *See* Firetog Decl. ¶ 2, S.J. Mot. Ex. C, DE [73-4] (in which Firetog affirms that he represented all the Montfort Trust defendants in connection with environmental matters relating to the Site, including the Order of Consent dated October 7, 2000 and the subsequent modification on May 7, 2002). Firetog claims, however, that he did not have anything to do with the drafting or negotiation of the Indemnification Agreements at issue in the third party complaints, nor did he represent any party in the sale of the Site from the Trust to Musso. Third party plaintiffs do not dispute this, but argue that the

---

[3]Regarding the timing of the motions, the court notes that there was a sizeable delay between Firetog's appearance and the motions to disqualify. Both third party complaints were filed on February 8, 2013, and Firetog filed his notice of appearance on behalf of Musso on March 7, 2013. Although Bradley's counsel asked Firetog to withdraw as early as July 2, 2013, *see* Mtn, Ex. A DE [73-2], Bradley first raised the issue of Firetog's disqualification with the court by requesting leave to file a motion to disqualify in December 2013. In the interim, Bradley had moved for summary judgment and Firetog had prepared and filed the papers in opposition.

information he received while representing them during the negotiation of the Consent Orders with the DEC is relevant to the third party actions and necessitates his disqualification.

## DISCUSSION

Legal Standards

A motion to disqualify an attorney rests within the broad discretion of the court. *See Cressell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990). The court's authority to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)). In deciding a motion to disqualify an attorney, the court must balance "a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Id.* (internal quotation marks and citation omitted). Motions to disqualify opposing counsel "are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." *Gabayzadeh v. Taylor,* 639 F. Supp. 2d 298, 300-01 (E.D.N.Y. 2009) (internal quotation marks and citations omitted). As a result of this potential for abuse, such motions are "subject to particularly strict scrutiny." *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y.2008); *see also Hickman v. Burlington Bio-Med. Corp.,* 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005) (disqualification motions are "subject to a high burden of proof") (citations omitted).

The third party plaintiffs assert that Firetog has violated Canon 4, DR 4-101, and DR 5-108 of the New York Canons and Disciplinary Rules which used to govern attorney conduct. New York repealed Canon 4 and the Disciplinary Rules in 2009, however, and replaced them with the Rules of Professional Conduct. *See* 22 N.Y. COMP. CODES R. & REGS. §1200.0. The conduct complained

of by movants now falls within Rule 1.9 of New York Rules of Professional Conduct. *See AVRA Surgical, Inc. v. Dualis MedTech GmbH,* No. 13 Civ. 7863, 2014 WL 2198598, at *3 (S.D.N.Y. May 27, 2014). Rule 1.9 provides, in pertinent part, that:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing;
> . . .
> (c) A lawyer who has formerly represented a client in a matter . . . shall not thereafter
>
>> (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or
>>
>> (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

Rule 1.9, 22 N.Y. COMP. CODES R. & REGS. §1200.0.

Violation of New York's conduct rules does not automatically mean that a motion to disqualify must be granted. "Although the American Bar Association ('ABA') and state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification. . . Instead, disqualification is warranted only if 'an attorney's conduct tends to taint the underlying trial.'" *GSI Commerce Solutions, Inc. v. BabyCenter, LLC.,* 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Nyquist,* 590 F.2d at 1246) (additional citation omitted). New York's new rules are substantively similar to the old rules, and "[t]herefore, much of the precedent interpreting the old rules still remains applicable." *Pierce & Weiss, LLP v. Subrogation Partners LLC,* 701 F. Supp. 2d 245, 251 (E.D.N.Y. 2010).

A legitimate disqualification issue arises in cases "when an attorney places himself in a position where he could use a client's privileged information against that client." *Hempstead Video,* 409 F.3d at 133. In a case involving successive representation of clients, an attorney may be disqualified if "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir. 1983) (citations omitted). The "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion." *TufAmerica, Inc. v. Codigo Music LLC,* No. 11 Civ. 1434, 2013 WL 1903867, at *4 (S.D.N.Y. May 7, 2013) (quoting *United States Football League v. Nat'l Football League (U.S.F.L.),* 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)). In this case, there is no dispute that Firetog previously represented the Monfort Trust, and thus the first factor is satisfied.

Before analyzing the remainder of the substantial relationship test, the court will address Firetog's contention that he consulted with Musso, who was then the property manager of the Site, with the Trustees' "express and tacit understanding and consent concerning matters related to the negotiation and execution of the 2002 DEC Order," Opp. at 6, and thus the Trustees had no expectation that their confidences would be kept from Musso. "[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would

7

withhold from his present client." *Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir. 1977); *see also Pacheco Ross Architects, P.C. v. Mitchell Assocs. Architects,* Civ. No. 1:08-CV-466, 2009 WL 1514482, at *3 (N.D.N.Y. May 29, 2009) (noting that "the substantial relationship test is inapposite if the former client had no reasonable expectation that the confidences disclosed to the attorney during his representation of the former client would not also be shared with the attorney's present adverse client").

In *Allegaert*, two brokerage firms, using separate counsel, executed a realignment agreement that "resembled a joint venture" and permitted each firm "to retain separate identities while imposing mutual obligations." *Allegaert,* 565 F.2d at 248-49. When the realignment agreement was attacked in court in a derivative action, plaintiffs sought to disqualify counsel that had earlier represented one brokerage firm during the negotiation of the realignment agreement from representing the second brokerage firm in the litigation. The Second Circuit found that any information shared by the brokerage firm with its attorney was meant to be shared with the second brokerage firm and thus this situation did not present the typical scenario where the attorneys "changed sides from a former client to a current, adverse client." *Id.* at 251. The holding in *Allegaert* has been "limited to situations 'where a partnership, joint venture or other cooperative effort breaks up, or where two former co-parties to a litigation sue each other.'" *Glacken v. Inc. Vill. of Freeport,* Civil Action No. 09-4832, 2010 WL 3943527, at *3 (E.D.N.Y. Oct. 6, 2010) (quoting *U.S.F.L.,* 605 F. Supp. at 1452 n.7); *see Rocchigiani v. World Boxing Counsel,* 82 F. Supp. 2d 182, 187 (S.D.N.Y. 2000) (*Allegaert* applies "where the prior representation by the attorney in question was within the context of a joint representation between a former, but now adverse, client and a present, long-standing, client").

8

The *Allegaert* rule is inapplicable to the current situation since there is no indication that the Monfort Trust and Musso were on an equal footing during the time that Firetog represented the Trust, or that Musso was part of a "joint representation" with the Monfort Trust. Although the Trustees may have known about, and intended that, Firetog share with Musso information germane to his position as property manager, it does not follow that they assumed Firetog would share all their confidences. The parties do not set forth Musso's job title or relationship to the Trust, but it appears that at the time Firetog represented the Trust, Musso was an employee, not a partner or co-venturer. Applying the *Allagaert* rule in this case is unwarranted and would be an overbroad application not supported by case law.

The court next considers the remaining two factors for determination of a motion to disqualify –"(1) the similarity of the issues in the two cases, and (2) the likelihood that the lawyer's role in the prior case gave him access to '*relevant* privileged information.'" *Acme Am. Repairs, Inc. v. Katzenberg,* No. CV-03-4740, 2007 WL 952064, at *5 (E.D.N.Y. Mar. 25, 2007) (quoting *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978)) (emphasis in original).

Substantial Relationship

To warrant disqualification, there must be a substantial relationship between the issues in both the prior and pending case such that the issues are "identical" or "essentially the same." *Gov't of India,* 569 F.2d at 739-40. "Put differently, a substantial relationship exists when the material facts of the prior representation are 'necessary to the present litigation.'" *Acme Am. Repairs,* 2007 WL 952064, at *5 (quoting *U.S.F.L.,* 605 F. Supp. at 1459). In general, "this element is satisfied 'if central issues are common to both [matters] and if the witnesses, testimony, and other evidence

9

germane to one action are likely to be similar to the other.'" *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* No. 01 CV 1574, 2006 WL 2013471, at *6 (E.D.N.Y. July 18, 2006) (quoting *Pastor v. Trans World Airlines, Inc.,* 951 F. Supp. 27, 31 (E.D.N.Y. 1996) (internal quotations and citation omitted)). In a situation where the prior representation was more general and not confined to a litigation, the test is "whether facts which were necessary to the first representation are necessary to the present litigation." *U.S.F.L.,* 605 F. Supp. at 1459.

Firetog claims that the legal issues presented in the first and third party actions are completely different. Although they concern contractual responsibility for costs associated with the clean-up at the Site, the first party action concerns the DEC Consent Orders while the third party actions must interpret an Indemnification Agreement that Firetog took no part in drafting or negotiating. Third party plaintiffs acknowledge that the merits of the first party action need not be determined for the Court to determine liability under the Indemnification Agreement, but state that "the undisputed facts concerning FIRETOG's extensive representation of the Trust with regard to the environmental conditions related to the Site, particularly the central role he personally played in the negotiations with the DEC which culminated in the Order on Consent, are pertinent to both the first-party and the Third-Party action." Mem. at 8.

It appears at first blush that the relationship between Firetog's representation of the Trust and Musso are intertwined, but closer analysis compels a different conclusion. While the Site itself is the common thread running through the cases, the first and third party actions are premised on completely different theories of liability. The Bradley third party action states claims for breach of contract and promissory estoppel arising from Musso's obligations under the Indemnification

Agreement with him, while the Monfort Trust third party action asserts a single claim for indemnity under their Indemnification Agreement with Musso. Thus, the third party actions solely seek indemnification from Musso for any liability the Trustees are ultimately found to owe to the DEC. Firetog's prior representation of the Trust involved the environmental condition at the Site, but the Indemnification Agreements dealt only with financial responsibility for the Site post-sale. There is no identity of facts, issues, witnesses, or evidence that compels a finding that there is a substantial relationship between Firetog's prior and current representations. Accordingly, the motions to disqualify must fail.

      Access to Privileged Information

Even assuming the third party plaintiffs successfully established a substantial relationship between the Firetog's prior and current representations, they have failed to establish that Firetog had access to *relevant* privileged information. While movants need not disclose the specific information in Firetog's possession, the court is unconvinced that he had access to relevant information. Firetog clearly had intimate knowledge of the Monfort Trust's dealings with the DEC, but the third party plaintiffs do not dispute that he took no part in the negotiation and sale of the Site, or in the preparation of the Indemnification Agreements at the heart of the third party actions. Accordingly, movants have failed to establish that Firetog is in possession of any confidential information relevant to the determination of the third party actions.

Moreover, Rule 1.9 bars successive representation in a substantially related matter in which the new client's interests are "material adverse to the interests of the former client." As Musso's alleged liability under the Indemnification Agreements will only be triggered if the DEC is

successful in the first party action, Musso's and the Trust's interests are aligned, not adverse.

Bradley further argues in his supplemental papers that Firetog violated Rule 1.18 of the New York Code of Professional Conduct because he had preliminary, though ultimately unsuccessful, discussions with one or more of the Trustees about representing them in the first party action, making them "prospective clients." Rule 1.18 provides in part that after such discussions, "a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation" and "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter." 22 N.Y. COMP. CODES R. & REGS. §1200.0. Bradley has provided several e-mail exchanges in support of his argument. The substance of those exchanges, however, is related entirely to the issues raised in the first party action. As the requirements of Rule 1.18 also implicate the considerations of substantial relationship and "adverse" representation, this basis for disqualification fails for the same reasons as discussed above.

Accordingly, it is hereby,

ORDERED, that defendant/third party plaintiffs' motions to disqualify, DE [73] and [95], are DENIED, and it is further

ORDERED that the parties shall appear for a status conference on **October 28, 2014 at 11:00 a.m.** in courtroom 820 of the Central Islip courthouse.

Dated: Central Islip, New York
       October 7, 2014

**SO ORDERED:**

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge